UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGIE HAMILTON,

    Plaintiff,

v.

EDUCATION CREDIT
MANAGEMENT CORP.,

    Defendant.

Case No. 20-cv-10006
Hon. Matthew F. Leitman

_____/

## ORDER GRANTING DEFENDANT'S SECOND MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT (ECF No. 31)

Plaintiff Margie Hamilton took out student loans to pay for law school, later consolidated those loans, and eventually defaulted on her consolidated loan. Hamilton's consolidated student loan promissory note was thereafter assigned to Defendant Educational Credit Management Corporation ("ECMC"), a guaranty agency under the Higher Education Act of 1965, 20 U.S.C. § 1071 *et seq.* ECMC then attempted to collect Hamilton's outstanding loan balance by, among other things, administratively garnishing her wages. Hamilton responded by challenging ECMC's collection efforts in an administrative hearing before the United States Department of Education. The hearing officer ruled against her and confirmed that ECMC had the right to garnish her wages.

Hamilton then brought this civil action against ECMC. She acknowledges that she owes the debt that ECMC is attempting to collect, but she says that ECMC is not the right entity to collect that debt. She claims that ECMC has no right to undertake collection efforts against her because the assignment of her promissory note to ECMC was invalid and because ECMC lacks sufficient proof that it owns that note.

Hamilton's own actions belie her contention that ECMC did not validly acquire her loan and cannot prove that it owns the loan. Indeed, Hamilton has repeatedly acknowledged that ECMC holds her loan. For instance, before she defaulted on her loan, she made payments on the loan to ECMC. And after she defaulted, she asked ECMC for debt relief options. Moreover, she declared bankruptcy and did not object when ECMC appeared in the bankruptcy proceedings as the assignee of the party that previously owned her loan. Finally, as noted above, a hearing officer with the United States Department of Education has rejected Hamilton's argument that ECMC may not garnish her wages because it lacks sufficient proof that it owns her loan. Hamilton has not properly challenged that determination.

For all of these reasons, and the other reasons explained below, the Court concludes that Hamilton's challenge to ECMC's efforts to collect her outstanding

debt fails as a matter of law. Accordingly, the Court **GRANTS** ECMC's motion for summary judgment on Hamilton's remaining claims (ECF No. 31).

**I**

**A**

In the mid 1990's, Hamilton decided to attend law school. Like many law students, Hamilton took out student loans in order to pay for her legal education. As of February 2000, Hamilton still owed $42,675.24 on two outstanding student loans.

On March 15, 2000, Hamilton consolidated her student loans into a single debt under the Federal Family Education Loan Program, 34 C.F.R. § 682.100 *et seq.* ("FFELP"). (*See id.*) In order to accomplish that consolidation, Hamilton executed a promissory note in which she agreed to pay $323.82 per month towards her consolidated debt for the next 25 years (the "Promissory Note" or the "Loan"). (*See* Promissory Note, ECF No. 31-2, PageID.852.) Hamilton owed a total of $97,144.20 under the Promissory Note: $42,675.24 in principal and $54,468.96 in interest. (*See id.*)

The lender for the Loan was Key Bank. (*See id.*; *See also* Declaration of Kerry Klish, ECMC Ligation Specialist at ¶10, ECF No. 31-11, PageID.939.) The Pennsylvania Higher Education Association Agency ("PHEAA") served as the FFELP guarantor for the Loan. (*See id.*) Under the FFELP, "[i]f a borrower defaults

3

on a loan, the guarantor reimburses the lender for the amount of its loss. The guarantor then collects the amount owed from the borrower." 34 C.F.R. § 682.102(g)

The Promissory Note included the following disclaimer directly above Hamilton's signature:

> I UNDERSTAND THAT THIS IS A PROMISSORY NOTE. I WILL NOT SIGN THE PROMISSORY NOTE BEFORE READING IT INCLUDING THE WRITING ON THE REVERSE SIDE EVEN IF OTHERWISE ADVISED. I AM ENTITLED TO AN EXACT COPY OF THIS PROMISSORY NOTE, THE CONSOLIDATION LOAN REPAYMENT SCHEDULE DISCLOSURE STATEMENT, AND ANY AGREEMENT I SIGN. BY SIGNING THIS PROMISSORY NOTE, I ACKNOWLEDGE THAT I HAVE RECEIVED AN EXACT COPY HEREOF. MY SIGNATURE CERTIFIES THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE CONDITIONS AND AUTHORIZATION STATED IN THE 'BORROWER CERTIFICATION' PRINTED ABOVE.

(Promissory Note, ECF No. 31-2, PageID.852.)

**B**

In 2008, Hamilton defaulted on the Loan. (*See* Klish Decl. at ¶11, PageID.940.) Key Bank then filed a default claim with PHEAA, and PHEAA reimbursed Key Bank for the remaining unpaid balance on the Loan. (*See id.*) Thereafter, "PHEAA as [the] guarantor[,] took all right[,] title[,] and interest in the [L]oan in addition to continuing [its] FFELP guarantor responsibilities." (*Id.*)

4

## C

On December 18, 2008, Hamilton filed for federal bankruptcy protection under Chapter 13 of the Bankruptcy Code. (*See* Bankruptcy Petition, ECF No. 31-4.) Hamilton listed the Loan as an unsecured debt on her bankruptcy petition schedules. (*See* ECF No. 31-5, PageID.896.) In addition, PHEAA submitted a Proof of Claim with the Bankruptcy Court in the amount of $45,586.41. (*See* Proof of Claim, ECF No. 31-6, PageID.915.) Hamilton did not object to PHEAA's Proof of Claim.

On April 7, 2009, while Hamilton's bankruptcy proceedings remained pending, PHEAA assigned all of its right, title, and interest in the Loan, and its responsibilities as guarantor, to ECMC. (*See* Klish Decl. at ¶¶ 12-13, ECF No. 31-11, PageID.940; Assignment, ECF No. 31-7, PageID.919; Affidavit of Christyan Seay, PHEAA Manager, at ¶6, ECF No. 31-7, PageID.922, acknowledging assignment of the Loan to ECMC.) ECMC then filed a notice of the assignment in the Bankruptcy Court. (*See* Notice of Assignment, ECF No. 31-7.) Hamilton did not object to the assignment during her bankruptcy proceedings, and she voluntarily dismissed her bankruptcy petition on February 11, 2014. (*See* Voluntary Dismissal, ECF No. 31-10.) Moreover, both during her bankruptcy proceedings and after she emerged from bankruptcy, Hamilton made periodic payments to ECMC on the Loan. (*See* ECMC Payment History, ECF No. 31-9.)

**D**

In 2017, Hamilton once again fell behind on her payments under the Loan, and ECMC sent her a letter concerning her delinquency. (*See* Hamilton email referencing ECMC letter, ECF No. 31-13, PageID.946.) On June 23rd of that year, Hamilton responded to ECMC, acknowledged that she was behind on her payments, and asked ECMC for advice about her options:

> I am behind on my loans. According to the letter you sent me I may have options. Can you tell me what options are available to me?

(*Id.*) ECMC then provided Hamilton with information about how to bring her loan current and/or how to request a deferment or forbearance. (*See id.*, PageID.945.)

Hamilton was not able to successfully exercise any of the options identified by ECMC, and she defaulted on the Loan in November 2018. (*See* Klish Decl. at ¶16, ECF No. 31-11, PageID.940.)

**E**

In December 2018, Hamilton requested that ECMC review the Loan. (*See* Req. for Review, ECF No. 31-14.) In that request, Hamilton said that she believed that the Loan "was not enforceable because there [was] no proof of debt or payment history." (*Id.*, PageID.948.) She also said that she had "not been afforded the opportunity" to review the "original loan." (*Id.*) ECMC then examined the Loan and concluded that "[a] thorough review of [her] account indicate[d she was] liable for

the debt." (ECMC Resp. to Req. for Review, ECF No. 31-15, PageID.952.) ECMC also told Hamilton that she could request a review of its decision from the United States Department of Education. (*See id.*)

F

In March 2019, ECMC began the Administrative Wage Garnishment ("AWG") process pursuant to 34 C.F.R. § 682.410(b)(6)(vi). (*See* Klish Decl. at ¶17, ECF No. 31-11, PageID.940-941.) As part of that process, ECMC issued an AWG order directed to Hamilton's employer, General Motors. (*See id*; *see also* AWG order, ECF No. 31-19.) In the AWG order, ECMC sought to garnish 15% of Hamilton's wages. (*See* AWG order, ECF No. 31-19.)

At around this same time, Hamilton formally asked the United States Department of Education to review ECMC's right to enforce the Loan and to issue the AWG order. (*See* Hamilton Ltr., ECF No. 31-17.) Hamilton argued to the Department of Education, in part, that ECMC could neither legally enforce the Loan nor issue an AWG order because ECMC had not provided her a complete copy of the Promissory Note. (*See* Dep't of Ed. Decision, ECF No. 31-22, PageID.974.)

On May 2, 2019, Department of Education hearing officer Josephine Ortiz-Avila issued a written decision rejecting Hamilton's arguments and denying Hamilton's objections to the AWG order. (*See id.*) Oritz-Avila first explained that her "decision was rendered by the U.S. Department of Education (the Department)

after careful review of [Hamilton's] arguments and all available records related to [Hamilton's] account, including those submitted by [Hamilton] and those maintained by ECMC." (*Id.*, PageID.973.) She then said that "[t]he Department ha[d] determined that [Hamilton's] account [was] subject to collection through administrative wage garnishment of 15% of [Hamilton's] disposable pay." (*Id.*) Ortiz-Avila explained the "reason for [her] decision" as follows:

> You objected to garnishment on the ground that the loan is not an enforceable debt. You claimed that you have requested loan documentation and have not been given the opportunity to view the documents. On January 4, 2019, ECMC provided the documentation you requested. Therefore, this objection is denied.

(*Id.*, PageID.974.)

## II

Hamilton filed this federal action against ECMC on January 2, 2020. (*See* Compl., ECF No. 1.) Hamilton subsequently filed an Amended Complaint. (*See* Am. Compl., ECF No. 12.) In the Amended Complaint, Hamilton brought the following state and federal claims against ECMC:

- Count One: "Uniform Commercial Code (UCC) Violations";
- Count Two: "The Debt Collection Improvement Act (DCIA)";
- Count Three: "Unlawful Collection Activity – Violation of the [Administrative Procedures Act]";

8

- Count Four: Violation of Plaintiff's "Procedural Due Process Rights for a Meaningful Opportunity to be Heard";

- Count Five: "Violation of the [Federal Rule of Evidence] § 1001 to 1008.30 and [Michigan Rule of Evidence] § 1002"[1];

- Count Six: "Common Law Conversion"

- Count Seven: "Violation of [Michigan Compiled Laws] 600.2919a – Statutory Conversion"; and

- Count Eight: "Fraud in the Factum."

On April 26, 2021, the Court issued an order in which it (1) dismissed all of Hamilton's federal claims (Counts Two, Three, Four, and Five of the Amended Complaint) and (2) allowed Hamilton to proceed on her state-law claims (Counts One, Six, Seven, and Eight of the Amended Complaint). (*See* Order, ECF No. 24.)

ECMC moved to dismiss and/or for summary judgment on Hamilton's remaining state-law claims on July 6, 2021. (*See* Mot., ECF No. 31.) The Court held a video hearing on the motion on November 19, 2021. (*See* Notice of Hearing, ECF No. 36.)

---

[1] In this Count, Hamilton sought a declaratory judgment that ECMC had violated the Debt Collection Improvement Act and Administrative Procedures Act.

During the hearing, Hamilton acknowledged that she was in default and owed the amount that ECMC is seeking to collect. She contended, however, that ECMC was not the right entity to collect her admitted debt.

Hamilton also conceded during the hearing that ECMC was entitled to summary judgment on both Count One (her claims under the Michigan Uniform Commercial Code) and Count Eight (her claim for "fraud in the factum") of the Amended Complaint. Thus, for the reasons stated in ECMC's motion, the Court **GRANTS** ECMC summary judgment on Counts One and Eight of Hamilton's Amended Complaint.

The only remaining claims are those in which Hamilton alleges that ECMC committed common law and statutory conversion when it issued the AWG order and garnished her wages.

### III

ECMC has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id*. "The mere existence of a scintilla

10

of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52.

## IV

### A

Hamilton's claims for common law and statutory conversion rest upon an essential shared premise: that ECMC had no right to collect on the Loan by garnishing her wages because the Loan was never validly assigned from PHEAA to ECMC. She insists that that purported assignment of the Loan was invalid under the Statute of Frauds. (*See* Hamilton Resp., ECF No. 32, PageID.1007-1008.)

Hamilton is not entitled to relief on this theory because she does not have standing to challenge the assignment. The general rule is that "a litigant who is not a party to an assignment lacks standing to challenge that assignment." *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010). And while there are limited exceptions to this general rule, none apply to Hamilton. As the Sixth Circuit has recognized, a debtor "may assert as a defense [to a collection effort based upon an assignment] any matter which renders the assignment absolutely invalid or ineffective, or void. These

11

defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment." *Id.* (internal citation omitted). Notably, in *Connolly v. Deutsche Bank Nat. Trust Co.*, 581 F. App'x 500, 507 (6th Cir. 2014), the Sixth Circuit held that a non-party to an assignment who failed to raise one of these three defenses lacked standing to challenge the assignment. *See id.* (holding that because plaintiff had "not asserted any of the defenses from *Livonia*" and because it "was not clear any of [those] defenses appl[ied]," plaintiff did "not have standing to challenge" an assignment). Here, Hamilton has not raised any of the defenses identified in *Livonia*, and thus, like the plaintiff in *Connolly*, she lacks standing to challenge the assignment of the Loan.

Moreover, there is no reason to permit Hamilton to challenge the assignment of the Loan from PHEAA to ECMC. The Sixth Circuit has permitted borrowers to challenge purported assignments of their loans – under the three defenses identified above – in order to protect themselves against the "risk of paying the debt twice." *Livonia*, 399 F. App'x at 102. Stated another way, the Sixth Circuit has permitted borrowers to contest assignments of their loans where the borrowers faced a risk that *both* the purported assignor *and* the purported assignee would attempt to collect the loan from the borrower. *See id.* But that is not the case here. There is no risk that both PHEAA and ECMC will attempt to collect the Loan from Hamilton. Indeed, PHEAA executed a sworn affidavit that was submitted to both the Bankruptcy Court

12

and this Court in which PHEAA acknowledged that "[a]s of April 7, 2009, PHEAA transferred all right, title, and interest" in Hamilton's Loan to ECMC. (Seay Aff. at ¶6, ECF No. 31-7, PageID.922.) Given PHEAA's sworn statement to two federal courts, there is no meaningful risk PHEAA will now claim that it has a right to collect on the Loan and/or that PHEAA will actually attempt to do so. For this additional reason, the Court concludes that Hamilton lacks standing to challenge the assignment of her loan from PHEAA to ECMC.

Finally, Hamilton's own past conduct belies her current claim that the assignment of the Loan to ECMC was invalid and that ECMC therefore has no right to collect on the Loan. As explained above, Hamilton has repeatedly recognized ECMC's right to seek and receive payments under the Loan. She did not object to the notice of the assignment of the Loan to ECMC in her bankruptcy proceedings; she made payments to ECMC under the Loan; and she corresponded with ECMC about debt-relief options under the Loan. Simply put, Hamilton's own behavior shows that she considered ECMC to be the rightful holder of her Loan and that she recognized ECMC's right to collect payments under the Loan.

For all of these reasons, Hamilton may not pursue common law and statutory conversion claims against ECMC based upon the theory that ECMC attempted to collect on the Loan even though the Loan had not been properly assigned to ECMC.[2]

## B

Hamilton also argues that ECMC's garnishment of her wages constitutes statutory and common law conversion because ECMC lacks sufficient proof of the Loan. More specifically, Hamilton insists that ECMC may not attempt to collect on the Loan because it has never provided her a "true and exact copy" of the Promissory Note. (Hamilton Resp., ECF No. 32, PageID.1001.) The Court disagrees.

Hamilton's argument that ECMC may not undertake collection efforts unless and until it provides her with a "true and exact copy" of the Promissory Note is based upon a misreading of federal law. Hamilton says that "34 C.F.R. § 682.401(c)(3) requires that claims for payment be based on a true and exact copy of such note." (*Id.*) But the regulation that she relies upon – 34 C.F.R. § 682.401(c)(3) – does not apply to the relationship between a FFELP guarantor like ECMC and a delinquent borrower. The regulation appears in a broader regulation that addresses the essential components of an agreement between a FFELP guarantor (like PHEAA or ECMC) and the Secretary of Education. *See* 34 C.F.R. § 682.401(a). And the specific

---

[2] Because the Court concludes that Hamilton's conversion claims fail on the merits, it need not address ECMC's alternative argument that those claims are preempted by federal law.

regulation cited by Hamilton relates to a request by an original lender for reimbursement from a FFELP guarantor in the event that a borrower defaults and cannot pay the lender. *See* 34 C.F.R. § 682.401(c)(3) (addressing a "claim for payment" by a lender). The regulation does not address an attempt by a lender or FFELP guarantor to collect a defaulted student loan from a borrower. *See id*. Thus, the regulation does not support Hamilton's contention that ECMC could not collect amounts that Hamilton has acknowledged are due and owing under the Loan unless and until ECMC gave Hamilton and "true and exact copy" of the Promissory Note.

A different regulation applies when (1) a FFELP guarantor seeks to collect an unpaid debt from a borrower and (2) the borrower then challenges "the existence, amount, or enforceability of [the] debt," as Hamilton did here. 34 C.F.R. § 682.410(b)(9)(F)(1). That regulation provides only that a FFELP guarantor must produce "evidence of the existence of the debt." 34 C.F.R. § 682.410(b)(9)(F)(1)(i). It does not require a FFELP guarantor to produce any specific type of evidence, nor does it compel the guarantor to provide the borrower with a "true and exact copy" of the promissory note at issue before the guarantor may undertake collection efforts.

Notably, as described above, a hearing officer with the United States Department of Education has determined that ECMC did provide Hamilton with sufficient evidence of the existence of the Loan. (*See* Dep't of Ed. Decision, ECF No. 31-22, PageID.974.). That hearing officer rejected Hamilton's argument that

15

ECMC lacked sufficient proof of the Loan because it did not have a true and exact copy of the Promissory Note. (*See id.*)

Hamilton urges the Court to disregard the hearing officer's determination, but she has not properly challenged that administrative ruling. "[T]o the extent that [Hamilton wished to] contest[] the Department of Education's actions [vis-à-vis the Loan], she [was required to] bring a complaint against the Secretary of Education pursuant to 20 U.S.C. § 1082(a)(2) or [or to seek] review of its administrative ruling pursuant to the Administrative Procedures Act, 5 U.S.C. § 706(2)." *Halzack v. Educational Credit Management Corp.*, 2011 WL 2015479, at *7 (E.D. Va. May 12, 2011). *See also* 5 U.S.C. § 703 (providing that a claim under the Administrative Procedures Act may only be brought against "the United States, the agency by its official title, or the appropriate officer"). Hamilton did neither. Instead, she filed this action and named ECMC as the only Defendant. But ECMC is a non-profit, private corporation whose "alleged acts and omissions are [not] fairly chargeable to the federal government." *Halzack*, 2011 WL 2015479, at *11. Simply put, Hamilton has not shown that she has properly challenged the Department of Education's ruling upholding ECMC's right to issue the AWG order and garnish her wages.

For all of these reasons, the Court rejects Hamilton's claim that ECMC committed common law and/or statutory conversion by attempting to collect on the

16

Loan even though it never provided her a "true and exact copy" of the Promissory Note.

## V

For all of the reasons stated above, ECMC is entitled to judgment as a matter of law on Hamilton's claims that it converted her property when it issued the AWG order and garnished her wages. The Court therefore **GRANTS** ECMC's motion for summary judgment (ECF No. 31).

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: December 1, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 1, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764